UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEFFERY BARRETT; and
KIMBERLY BARRETT,

                             Plaintiffs,

v.                                                        3:22-CV-0953
                                                          (LEK/ML)
LEW GRUBHAM, Supervisor; and
CHAD MORAN, Code Officer,

                             Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

JEFFERY BARRETT
   Plaintiff, *Pro Se*
22 Mcallister Road
Windsor, New York 13865

KIMBERLY BARRETT
   Plaintiff, *Pro Se*
22 Mcallister Road
Windsor, New York 13865


MIROSLAV LOVRIC, United States Magistrate Judge


## ORDER and REPORT-RECOMMENDATION

The Clerk has sent a *pro se* complaint in the above captioned action together with an

application to proceed *in forma pauperis* filed by Jeffery Barrett and Kimberly Barrett

(collectively "Plaintiffs") to the Court for review.  (Dkt. Nos. 1, 5.)  For the reasons discussed

below, I (1) grant Plaintiffs' *in forma pauperis* application, and (2) recommend that Plaintiffs'

Complaint be dismissed in its entirety with leave to amend.  (Dkt. Nos. 1, 5.)

## I.      BACKGROUND

Construed as liberally[1] as possible, Plaintiffs' Complaint—which was completed on a

form complaint alleging violations of civil rights pursuant to 42 U.S.C. § 1983—alleges that

defendants Lew Grubham and Chad Moran (collectively "Defendants") "force[d Plaintiffs']

large animal rescue to close" and remove animals from the property.  (Dkt. No. 1.)  The

Complaint alleges that, as a result of Defendants' actions, Plaintiffs "lost a land lease for (6

month's) [sic]."  (*Id*. at 3.)  In addition, the Complaint alleges that Defendants "placed

[Plaintiffs'] personal info to [their] home"[2] which caused "people [to come] to [Plaintiffs'] home

all hour's [sic] of the night."  (*Id*.)  Further, Plaintiffs allege that they were "forced . . . to rehome

many animal's [sic] with[]out just cause."  (*Id*.)  Based on these factual allegations, Plaintiffs do

not appear to assert any causes of action.  (*See generally* Dkt. No. 1.)  As relief, Plaintiffs request

$250,000.00 in damages.  (*Id*. at 4.)

Plaintiffs also filed an application for leave to proceed *in forma pauperis*.  (Dkt. No. 5.)

## II.     PLAINTIFFS' APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee,

currently set at $402, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized,

however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the

standard fee for commencing an action.[3]  28 U.S.C. § 1915(a)(1).  After reviewing Plaintiffs' *in*

---

[1]      The court must interpret *pro se* complaints to raise the strongest arguments they suggest.
*Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790
(2d Cir. 1994)).

[2]      Although it is not clear from the Complaint, the Court presumes that Plaintiffs intended
to allege that Defendants published their personal information in some format.

[3]      The language of that section is ambiguous because it suggests an intent to limit
availability of IFP status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the
commencement of an action without prepayment of fees "by a person who submits an affidavit

*forma pauperis* application (Dkt. No. 5), the Court finds that Plaintiffs meet this standard.

Therefore, Plaintiffs' application to proceed *in forma pauperis* is granted.[4]

### III.    LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the

court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is

frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks

monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In addition, the Court shall dismiss any action where the Complaint fails to allege facts

plausibly suggesting subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3); *see Steel Co. v.*

*Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1988) (holding that subject matter jurisdiction is

a "threshold question that must be resolved . . . before proceeding to the merits."); *Humphrey v.*

*Syracuse Police Dep't*, 758 F. App'x 205, 205-06 (2d Cir. 2019) (citing *United States v. Bond*,

762 F.3d 255, 263 (2d Cir. 2014)) ("[b]efore deciding any case on the merits, a district court

must determine that it has subject matter jurisdiction over the matter."); *Koziel v. City of*

*Yonkers*, 352 F. App'x 470, 471 (2d Cir. 2009) (summary order) (affirming *sua sponte* dismissal

of complaint on initial review for lack of subject matter); *Talley v. LoanCare Serv., Div. of FNF*,

15-CV-5017, 2018 WL 4185705, at *5 (E.D.N.Y. Aug. 31, 2018) (dismissing on initial review,

action challenging state court mortgage foreclosure judgment because the court lacked

---

that includes a statement of all assets such prisoner possesses").  The courts have construed that
section, however, as making IFP status available to any litigant who can meet the governing
financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City*
*of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[4]    Plaintiffs are reminded that, although the application to proceed *in forma pauperis* has
been granted, they will still be required to pay fees that they may incur in this action, including
copying and/or witness fees.

jurisdiction); *Eckert v. Schroeder, Joseph & Assoc.*, 364 F. Supp. 2d 326, 327 (W.D.N.Y. 2005) (citing *Hughes v. Patrolmen's Benevolent Ass'n of the City of N.Y., Inc.*, 850 F.2d 876, 881 (2d Cir. 1988), *cert. denied*, 488 U.S. 967 (1988)) ("[a] court shall, *sua sponte*, dismiss a complaint for lack of subject matter jurisdiction as soon as it is apparent that it lacks subject matter jurisdiction.").

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiffs' Complaint with this principle in mind, I recommend that it be dismissed.

Section 1983 authorizes a suit in law, equity, or "other proper proceeding for redress" against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights," but is a vehicle for vindicating federal rights embedded in the United States Constitution and federal statutes. *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). Therefore, a Section 1983 claim has two essential elements: "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, 09-CV-5446, 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013); *see also Annis v. Cnty of Westchester*, 136 F.3d 239, 245 (2d. Cir. 1998).

The Complaint fails to allege facts plausibly suggesting that Defendants violated Plaintiffs' constitutional or federal statutory rights. Instead, the Complaint alleges—in the vaguest of terms—that Defendants "force[d]" Plaintiffs' large animal rescue to "close it's [sic] door's [sic] and remove all the animals from the place of service." (Dkt. No. 1 at 2.) This single allegation does not attribute any specific action to either of Defendants. In addition, it does not allege that Defendants violated Plaintiffs' statutory or constitutional rights.

Moreover, even applying special solicitude, the undersigned can identify no other law or statute under which Plaintiffs can properly bring their claims in this Court based on the facts presently alleged in the Complaint.

As a result, I recommend that Plaintiffs' Complaint be dismissed.

## V.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[5]

It is not clear whether a better pleading would permit Plaintiffs to assert cognizable claims against Defendants.  Because Plaintiffs have not previously amended their Complaint, I recommend that they be granted leave to replead their claim(s).

If Plaintiffs choose to file an amended complaint, they should note that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient

---

[5]    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiffs must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiffs are informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**ACCORDINGLY**, it is

**ORDERED** that Plaintiffs' application to proceed *in forma pauperis* (Dkt. No. 5) is **GRANTED only for purposes of filing and any appeal unless the trial court certifies in writing that the appeal is not taken in good faith**; and it is further

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiffs' Complaint (Dkt. No. 1) for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[6]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[7]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: March  28 , 2023
         Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[6]      The Clerk shall also provide Plaintiffs with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[7]      If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Case 3:22-cv-00953-LEK-ML   Document 7   Filed 03/28/23   Page 9 of 36

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

2018 WL 4185705

Only the Westlaw citation is currently available.

<u>For Online Publication Only</u>

United States District Court, E.D. New York.

Nicholas TALLEY, Donna Evans Talley, Plaintiffs,

v.

LOANCARE SERVICING, DIV. OF
FNF, Selene Finance, Defendants.

15-CV-5017 (JMA) (AKT)
|
Signed 08/31/2018

**Attorneys and Law Firms**

Donna Evans Talley, Nicholas Talley, pro se.

Stuart L. Kossar, Esq., Knuckles, Komosinski & Manfro, LLP, 565 Taxter Road, Suite 590, Elmsford, New York 10523, Attorney for Defendant Selene Finance, LP.

Edward Rugino, Rosicki, Rosicki and Associates, P.C., 51 East Bethpage Road, Plainview, New York 11803, Attorney for Defendant LoanCare Servicing.

<u>**MEMORANDUM AND ORDER**</u>

Joan M. Azrack, United States District Judge

**\*1** On August 18, 2015, Donna Evans Talley and Nicholas Talley (together "plaintiffs" or the "Talleys") filed a *pro se* complaint in this Court against Selene Financing ("Selene") and LoanCare Servicing, Division of FNF ("LoanCare") (together "defendants"). On January 21, 2016, the Court granted plaintiffs' applications to proceed *in forma pauperis*, but dismissed the complaint *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiffs were given an opportunity to file an amended complaint. On February 16, 2016, plaintiffs filed an amended complaint, which seeks, among other things, injunctive relief to "[s]top illegal and fraudulent foreclosure." (Am. Compl. at 4.) Simultaneous with the filing of the amended complaint, plaintiffs filed an Order to Show Cause for a Preliminary Injunction and Temporary Restraining Order seeking to enjoin LoanCare from pursuing a foreclosure sale scheduled for March 3, 2016. In an Order dated February 24, 2016, this Court, *sua sponte* dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the

prayer for injunctive relief in plaintiffs' amended complaint and denied plaintiffs' request for a preliminary injunction and temporary restraining order. Before the Court are defendants' motions to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, the Court grants defendants' motions and dismisses plaintiffs' amended complaint in its entirety.

**I. BACKGROUND**

The following facts are taken from plaintiffs' amended complaint, the record before the Court and fillings from the foreclosure action. In deciding a motion to dismiss under Rule 12(b)(6), the Court may take judicial notice of public records, including state court filings. Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). The Court can also consider exhibits—such as copies of the mortgage and mortgage assignments—which are attached or integral to the amended complaint. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

**A. The Bay Shore Mortgage**

On March 7, 2009, Nicholas Talley and Donna Evans Talley executed a mortgage in favor of non-party Lend America (the lender) in the principal sum of $311,558 concerning a property located at 22 Lakeland Street, Bay Shore, New York ("the Bay Shore property"). (Am. Compl., ECF No. 7 at 15-16.) Plaintiffs claim that there was no recording of the original title or delivery of the mortgage or deed to plaintiffs. (Id. at 5.) Plaintiffs further allege that Lend America became defunct in December of 2009 and that no assignments of the mortgage occurred prior to 2012. (Id.) By way of an endorsement to the note and two assignments of the mortgage, the loan instruments were transferred to defendant LoanCare on February 27, 2012. (Id. at 5, 8-12.) The assignment to LoanCare was recorded on April 10, 2012 in the Suffolk County Clerk's Office. (Id. at 5.) On March 31, 2015, LoanCare assigned the mortgage to defendant Selene. (Id. at 24-25.)

**B. The Foreclosure Proceeding**

**\*2** Plaintiffs defaulted on the note and mortgage by failing to make their monthly payment due in January 2011 and

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

Case 3:22-cv-00953-LEK-ML    Document 7    Filed 03/28/23    Page 10 of 36

each month thereafter. (Kossar Decl. Ex. J, ECF No. 42-11 at 3.) As a result, LoanCare commenced an action against plaintiffs in New York State Supreme Court, Suffolk County on March 19, 2012. (Id.) In the Talleys' verified joint answer, they admitted their default in payments but requested a judicially mandated loan modification. (Id. at 8.) The state court denied the Talleys' request, noting that after numerous prior attempts the parties had not been able to reach an agreement to modify the loan or settle the action. (Id.) The Talleys also asserted fifteen affirmative defenses, alleging, among other things: lack of personal jurisdiction; lack of standing and legal capacity; fraud in connection with the origination and the servicing of the loan; lack of good faith with respect to a loan modification; and LoanCare's failure to state a cause of action, mitigate damages and comply with the provisions of Real Property Actions and Proceedings Law and Banking Law. (Id. at 3.) LoanCare moved for summary judgment against the Talleys seeking to strike their answer and dismiss their affirmative defenses amongst other relief. (Id.) The Talleys opposed the motion and cross moved for summary judgment seeking dismissal of the complaint on the grounds that LoanCare lacked standing. (Id. at 4.)

In an Order dated April 11, 2014, the state court denied the Talleys' cross motion for summary judgment in its entirety. (Id.) In response to the Talleys' lack of standing defense, the court found that, "as holder of the endorsed note and as the assignee of the mortgage, [LoanCare] ha[d] standing to commence [the foreclosure] action. (Id. at 5.) The court noted that LoanCare demonstrated that it had been in "continuous possession of the note and mortgage since February 27, 2012," concluding that LoanCare "is the transferee and holder of the original note as well as the assignee of the mortgage by virtue of the written assignments." (Id. at 6.) In sum, the court held that LoanCare satisfied its *prima facie* burden as to the merits of the foreclosure action as it produced the endorsed note, the mortgage and assignments as well as evidence of plaintiffs' nonpayment. (Id. at 5.) Further, the court noted that LoanCare submitted proof of its compliance with the notice requirements of the 🔖RPAPL § 1303 and 🔖§ 1304. (Id.) Thus, the court found that LoanCare established its entitlement to summary judgement and dismissed the Talleys' remaining affirmative defenses finding that plaintiff submitted sufficient proof to establish, *prima facie*, that such defenses were unmeritorious. (Id. at 5, 7-9) (noting that circumstances of fraud must be "stated in detail" and that a defense based upon the "doctrine of unclean hands" lacks merit where a defendant fails to come forward with admissible evidence of immoral or unconscionable behavior).

The court also noted that the Talleys "failed to demonstrate that they made a reasonable attempt to discover the facts which would give rise to a triable issue of fact or that further discovery might lead to relevant evidence." (Id. at 8.) The court further rejected the Talleys' contention that they were entitled to a judicially mandated loan modification and ordered the appointment of a referee to compute amounts due under the subject note and mortgage. (Id. at 8, 9.)

On September 29, 2014, the state court entered final judgment for foreclosure and sale of the Bay Shore property. (Kossar Decl. Ex. K, ECF No. 42-12 at 3-8.) The state court further ordered that LoanCare was entitled to judgment establishing the validity of the mortgage and to recover $390,013.50 with interest to date of the closing of time of the referee's sale of the subject property. (Id.)

C. **The Instant Action**
Plaintiffs' amended complaint alleges fraud against defendants LoanCare and Selene along with other claims under: (1) the Real Estate Settlement Procedures Act ("RESPA"), 🔖12 U.S.C. § 2605, § 2608; (2) federal regulation 24 C.F.R. § 203.350 [1] associated with the National Housing Act, 12 U.S.C. § 1701; (3) various provisions of the Uniform Commercial Code ("UCC"); (4) the Pooling and Servicing Agreement ("PSA") that governs plaintiffs' mortgage; and (5) fraud. [2] (Amend. Compl.) Though stated somewhat differently, plaintiffs' amended complaint appears to reiterate their contentions from the prior state court foreclosure action, specifically alleging that LoanCare did not have standing to foreclose on the Bay Shore property and that the mortgage and its assignment to LoanCare, and subsequently to Selene, were invalid and therefore unenforceable. [3] (See Am. Compl.)

**\*3** Specifically, plaintiffs allege that the original deed has never been delivered since the inception of the mortgage. (Id. at 3.) Plaintiffs claim that although the original lender, Lend America ceased to exist as of December 2009, the mortgage was never assigned in the years 2009 through 2012. (Id.) Plaintiffs allege that Lend America "acquired the loan without providing principal/issuer resulting in no securitization of an FHA security instrument from 2009-2012." (Id.) Plaintiffs appear to allege that "no delivery of deed and title" concerning plaintiffs' mortgage "proves deceptive practices and fraud was the intention from the origination of the mortgage." (Id.) Plaintiffs further allege that defendants have no standing

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

Case 3:22-cv-00953-LEK-ML    Document 7    Filed 03/28/23    Page 11 of 36

under Article III of the Constitution because the original title was not recorded or delivered to plaintiffs. (Id. at 5-6.) Finally, plaintiffs allege that "even if this was a legal foreclosure, we were not given our due process because we were not notified by LoanCare or the Court of our Right to Appeal thereby denying us 'due process'." [4] (Id. at 6.) Specifically, plaintiffs allege that they did not receive the Notice of Entry of Final Judgment for Foreclosure and Sale from LoanCare until February 6, 2015 and that the September 29, 2014 judgment is in violation of the PSA, RESPA and the UCC because the mortgage and note were transferred to Selene on August 1, 2014. [5] (Id.)

Plaintiffs seek the following relief: "[d]efendants produce orig[inal] deed of mortgage, title with covenants"; "[r]eimburse[ment] [of] $4,336 for services not rendered (deed/title)"; "[p]rove securitization of mortgage from 2009 to present"; "[p]roduce chain of assignment"; "[e]xplain no recordation of closing documents"; "[r]eveal identity of principal/issuer"; "LoanCare cease and desist from harassing us and placing us under duress since the mortgage has been sold to Selene"; "[s]top illegal and fraudulent foreclosure by prior servicer, LoanCare without assignment." (Id. at 4.)

Defendants filed separate motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), claiming that plaintiffs' claims should be dismissed because (a) they are barred by the *Rooker-Feldman* doctrine; (b) are barred by the doctrines of *res judicata* and collateral estoppel; and (c) fail to state a claim upon which relief can be granted. [6]

## II. DISCUSSION

### A. Standard of review
The court is mindful that when considering a motion to dismiss a *pro se* complaint, the court must construe the complaint liberally and interpret the complaint "to raise the strongest arguments they suggest." Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). "However, mere conclusions of law or unwarranted deductions need not be accepted." Bobrowsky, 777 F. Supp. 2d at 703 (internal quotation marks and citations omitted).

#### 1. Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires the dismissal of a claim when there is a "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A case is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see Fed. R. Civ. P. 12(b)(1). In reviewing a motion to dismiss under this Rule, the Court accepts all factual allegations in the complaint as true. Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). However, the Court should not draw inferences favorable to the party asserting jurisdiction. Id. In resolving a jurisdictional issue, the Court may consider affidavits and other materials beyond the pleadings, but may not rely on mere conclusions or hearsay statements contained therein. J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004); see also All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 89, n. 8 (2d Cir. 2006) ("The presentation of affidavits on a motion under Rule 12(b)(1) ... does not convert the motion into a motion for summary judgment under Rule 56.").

#### 2. Fed. R. Civ. P. 12(b)(6)

**\*4** To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). Motions to dismiss invoking *res judicata* and collateral estoppel are properly brought under Rule 12(b)(6). See Hirsch v. Desmond, No. 08–CV–2660, 2010 WL 3937303, at *2 (E.D.N.Y. Sept. 30, 2010) (collateral estoppel); Wiercinski

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

Case 3:22-cv-00953-LEK-ML    Document 7    Filed 03/28/23    Page 12 of 36

v. Mangia 57, Inc., No. 09–CV–4413, 2010 WL 2681168, at *1 (E.D.N.Y. July 2, 2010) (*res judicata* ).

## B. *Rooker-Feldman* Doctrine

Defendants' initial argument is that this Court lacks jurisdiction to hear this case under the *Rooker-Feldman* doctrine. See ⚑ Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) (holding that only the Supreme Court can entertain a direct appeal from a state court judgment); ⚑ District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483, n.3 (1983) (finding that federal courts do not have jurisdiction over claims which are "inextricably intertwined" with prior state court determinations). The *Rooker-Feldman* doctrine "recognizes that 'federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments.' " Alston v. Sebelius, CV 13-4537, 2014 U.S. Dist. LEXIS 123613, at *23-24 (E.D.N.Y. July 31, 2014) (report and recommendation), adopted by, 2014 U.S. Dist. LEXIS 122970, 2014 WL 4374644 (E.D.N.Y. Sept. 2, 2014) (quoting Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005) ). "The doctrine applies when a litigant seeks to reverse or modify a state court judgment or asserts claims that are 'inextricably intertwined' with state court determinations." ⚑⚠ Park v. City of N.Y., No. 99–Civ–2981, 2003 WL 133232, at *7 (S.D.N.Y. Jan. 16, 2003) (citations omitted). The doctrine precludes a district court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." ⚑ Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

The Second Circuit has established four requirements that must be satisfied for the *Rooker–Feldman* doctrine to apply: (1) "the federal-court plaintiff must have lost in state court;" (2) "the plaintiff must complain of injuries caused by a state court judgment;" (3) "the plaintiff must invite district court review and rejection of the judgment;" and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." ⚑ Hoblock, 422 F.3d at 85 (internal quotation marks and citations omitted). The first and fourth requirements are procedural and the second and third are substantive. Id.

Specifically, with respect to foreclosure proceedings, "courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker–Feldman* doctrine." Ashby v. Polinsky, No. 06–CV–6778, 2007 WL 608268, at *1 (E.D.N.Y. Feb. 22, 2007) (internal quotation marks and citation omitted), aff'd, 328 F. App'x 20 (2d Cir. 2009); see also Done v. Wells Fargo Bank, N.A., No. 08–CV–3040, 2009 WL 2959619, at *3 (E.D.N.Y. Sept. 14, 2009); Ward v. Bankers Trust Co. of California, N.A., No. 09–CV–1943, 2011 WL 1322205, at *5 (E.D.N.Y. Mar. 29, 2011). This even includes challenges to a judgment of foreclosure that was allegedly procured by fraud, as plaintiffs have alleged herein. See, e.g., ⚑ Swiatkowski v. Citibank, 745 F. Supp. 2d 150, 164–65 (E.D.N.Y. 2010) aff'd, 446 F. App'x 360, 361 (2d Cir. 2011) (finding *Rooker–Feldman* doctrine applied to allegations that defendants engaged in a pattern of submitting fraudulent and perjurious documents related to the judgment of foreclosure and sale in other courts and that the allegations and relief sought were "inextricably intertwined with the state court judgment and would require overturning the state court judgment"); ⚑ Parra v. Greenpoint Mortgage Co., No. Civ.A. 01–CV–02010, 2002 WL 32442231, at *2 (E.D.N.Y. Mar. 26, 2002) ("The fact that [a] plaintiff alleges that a state court judgment was procured by fraud does not remove [the] claims from the ambit of *Rooker–Feldman*"); ⚠ Dockery v. Cullen & Dykman, 90 F. Supp. 2d 233, 236 (E.D.N.Y. 2000) (same).

*5 In the instant case, *Rooker-Feldman* bars plaintiffs' claims. The procedural requirements of *Rooker–Feldman* are satisfied. First, plaintiffs lost in state court. (Kossar Decl. Exs. J, K.) Second, the state court granted LoanCare summary judgment and denied plaintiffs' cross-motion for summary judgment by Order dated April 9, 2014, and issued a foreclosure judgment on September 29, 2014. (See id.) Since those judgments predate the August 18, 2015 filing of the initial complaint in the instant action, (see Compl., ECF 1), all pertinent state-court decisions were issued before the proceedings in this Court commenced.

The substantive requirements of *Rooker–Feldman* are also satisfied because plaintiffs' amended complaint seeks review and rejection of those state court decisions. Plaintiffs' claims complain of injuries, including, "deceptive practices and fraud" at the origination of the mortgage due to no delivery or recording of closing documents and seeks to "[s]top illegal and fraudulent foreclosure," in contravention of the state court judgment of foreclosure and the state court's acceptance of

the validity of the mortgage documents that formed the basis for that judgement. (Am. Compl. at 4-6.) See Trakansook v. Astoria Fed. Sav. & Loan Ass'n, No. 06–Civ–1640, 2007 WL 1160433, at *5 (E.D.N.Y. Apr. 18, 2007), aff'd, No. 07–2224–CV, 2008 WL 4962990 (2d Cir. Nov. 21, 2008) (holding that because plaintiff's complaint asked the court "to vacate the judgment of foreclosure and sale and award her title to the property, it [was] plain that she [was] inviting [the] court to 'reject' the [state court] order."); Done v. Option One Mortgage, No. 09–civ–4770, 2011 WL 1260820, at *6 (E.D.N.Y. Mar. 30, 2011) (concluding substantive requirements of Rooker-Feldman met where "[a]lthough plaintiff ha[d] made a cursory reference to seeking monetary damages, it [was] abundantly clear that the whole purpose of th[e] action [was] to undo the foreclosure judgment").

In their amended complaint, plaintiffs contend that LoanCare had no standing to bring the state court foreclosure action. (See Am. Compl.) However, as plaintiffs admit, the state court rejected this exact contention in its final judgment. (Pls.' Supplemental Opp. to defendant LoanCare's Mot. to Dismiss, ECF No. 43 at 4; Kossar Decl. Ex. J at 7 ("The assertions by the defendant mortgagors as to the plaintiff's alleged lack of standing, which rest, inter alia, upon alleged defects in the assignments, rife with speculation, are rejected as unmeritorious ...").) In opposition to defendants' motion to dismiss, plaintiffs specifically state that they are seeking "[r]escission of [f]inal [s]ummary [j]udgment", that this Court "[r]ender the lien unenforceable due to fraudulent concealment", and seek "[d]ismissal of the [f]oreclosure due to lack of [s]tanding." (Pls.' Opp. to defendant LoanCare's Mot. to Dismiss, ECF No. 39-12.) Plaintiffs are requesting this Court to do exactly what Rooker-Feldman forbids—to overturn the New York Supreme Court judgment of foreclosure. See Trakansook, 2007 WL 1160433, at *5 ("Because [plaintiff's] complaint asks this court to vacate the judgment of foreclosure and sale and award her title to the property, it is plain that she is inviting this court to 'reject' the [state court order]."). A ruling in plaintiffs' favor "would effectively declare the state court judgment [of foreclosure] fraudulently procured and thus void, ... which is precisely the result that the Rooker–Feldman doctrine seeks to avoid." Kropelnicki v. Siegel, 290 F.3d 118, 129 (2d Cir. 2002).

Moreover, plaintiffs' attempt to thwart application of Rooker-Feldman by labeling their claims as "fraud in the inducement" and "fraudulent concealment" rather than the "fraud" they alleged in the state action fails. Plaintiffs' claim of "newly discovered facts of fraud in the inducement" based on the actions of third parties at the time of the loan origination fails to preclude application of Rooker-Feldman. [7] (Pls.' Opp. to defendant Selene's Mot. to Dismiss, ECF No. 42-26 at 1.) Plaintiffs' claims relate not to defendants' conduct in the course of the state court foreclosure action, but, rather, to the validity of the underlying mortgage documents and defendants' standing to commence the foreclosure proceeding. Thus, "the injury complained of is the judgment permitting the foreclosure, which implicitly held that the mortgage[ ] w[as] valid." Webster v. Wells Fargo Bank, N.A., No. 08–civ–10145, 2009 WL 5178654, at *8 (S.D.N.Y. Dec. 23, 2009), aff'd sub nom. as amended (Jan. 24, 2012) Webster v. Penzetta, 458 F. App'x 23 (2d Cir. 2012) (finding the Court "plainly lack[ed] subject matter jurisdiction" over plaintiff's claims "attacking the validity of the foreclosure proceedings and the validity of the underlying mortgage loan documents" pursuant to Rooker-Feldman because "the injury complained of is the judgment permitting foreclosure, which implicitly held that the mortgages were valid."); see also Feliciano v. U.S. Bank Nat. Ass'n, No. 13–CV–5555, 2014 WL 2945798, at *2–4 & n. 7 (S.D.N.Y. June 27, 2014) (finding that plaintiffs' claims that "[defendant] wrongfully foreclosed upon their home because it lacked the legal capacity to accept the assignment of the underlying mortgage, and therefore lacked standing in the Foreclosure Action" failed under Rooker-Feldman and the fraud exception did not apply because "the complaint alleges fraudulent conduct (generally) by defendant prior to the institution of the Foreclosure Action rather than on the state court itself." (internal citations and quotations omitted) ). Therefore, plaintiffs attempt to invoke a fraudulent procurement exception to the Rooker–Feldman doctrine fails.

**\*6** Accordingly, the Court lacks subject matter jurisdiction over plaintiffs' claims and the amended complaint should be dismissed in its entirety.

## C. _Res judicata_

Alternatively, to the extent the Rooker-Feldman doctrine does not deprive the Court of subject matter jurisdiction, all of plaintiffs' claims are barred by the doctrine of res judicata. Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action." Flaherty v. Lang, 199 F.3d 607, 612 (2d Cir. 1999) (quotation omitted). "In applying the doctrine of res judicata, [a court] must keep in mind that a state court judgment has

the same preclusive effect in federal court as the judgment would have had in state court." Burka v. New York City Transit Auth., 32 F.3d 654, 657 (2d Cir. 1994). Further, federal courts must apply the doctrine of *res judicata* according to the rules of the state from which the judgment is taken. See

🚩 Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996); Giardina v. Nassau Cnty., No. 08–CV–2007, 2010 WL 1850793, at *3 (E.D.N.Y. May 7, 2010). New York State courts apply a transactional analysis, "barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." Burka, 32 F.3d at

657 (quoting 🚩 Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) ); see Done, 2009 WL 2959619, at *3 (same).

*Res judicata* applies when there was: (1) a previous action that resulted in a final adjudication on the merits, (2) the party against whom *res judicata* is to be invoked was party to the previous action or in privity with a party to that action, and (3) the claims involved in the current case were, or could have

been, raised in the previous action. 🚩 Swiatkowski, 745 F.

Supp. 2d at 171 (quoting 🚩 Whelton v. Educ. Credit Mgmt. Corp., 432 F.3d 150, 155 (2d Cir. 2005) ). *Res judicata* applies to defenses that could have been raised in the prior action as well. Waldman v. Vill. of Kiryas Joel, 39 F. Supp. 2d 370, 377 (S.D.N.Y. 1999) (*res judicata* "prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually

raised or decided") (quoting 🚩 Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir. 1992) ); Robbins v. Growney, 229 A.D.2d 356, 645 N.Y.S.2d 791, 792 (N.Y. App. Div. [1st] Dep't 1996) ("The doctrine of *res judicata* is applicable ... to defenses raised in the prior action or which, though not raised, could have been.") (internal citation omitted). "All litigants, including *pro se* plaintiffs, are bound by the principles of *res judicata*. Done, 2009 WL 2959619, at *3.

Here, plaintiffs' claims are barred from further adjudication by *res judicata*. First, the judgment of foreclosure entered against plaintiffs is an adjudication on the merits, which prevents reconsideration of any claim that is based on the same facts as the foreclosure judgment and which would disturb LoanCare's (or Selene's) ability to enforce rights provided pursuant to the mortgage and the note securing the Bay Shore property. See id. at *4. Second, the facts pled by plaintiffs in their amended complaint—that LoanCare brought the foreclosure suit in the Suffolk County Supreme

Court and was not the holder of a valid mortgage note at the time of assignment, (see Am. Compl.)—would have been central to deciding any entitlement to a judgment of foreclosure, and thus demonstrates that their claims in the current suit arise from the same transaction as LoanCare's claim in the previous foreclosure action. Done, 2009 WL 2959619, at *4. Plaintiffs' claims arising from the origination of the mortgage and attacking the ability of defendants to enforce it in the foreclosure proceedings, (see Am. Compl.), not only could have been raised as a defense to foreclosure in the state court, but were actually raised, (see Kossar Decl. Exs. I, J) and therefore cannot be relitigated in this Court.

See, e.g., 🚩 Hinds v. Option One Mortg. Corp., No. 11–CV–6149, 2012 WL 6827477, at *5 (E.D.N.Y. Dec. 6, 2012) (report & recommendation), adopted by 2013 WL 132719 (E.D.N.Y. Jan. 10, 2013) ("Inasmuch as Plaintiff's fraud claim is premised on his allegations that Defendants obtained the underlying mortgage through predatory lending tactics and fraud, *res judicata* operates to preclude federal review of such a claim ... [since the plaintiff's claims] arise from the same factual grouping—namely the validity of Plaintiff's mortgage, and the right of Defendants to enforce that agreement in a

state court foreclosure proceeding"): 🚩 Solomon v. Ocwen Loan Servicing, LLC, No. 12-CV-2856, 2013 WL 1715878, at *5 (E.D.N.Y. Apr. 12, 2013) ("The state-law claims asserted by plaintiff arise from the origination of the [m]ortgage and attack the ability of defendants to enforce it in the foreclosure proceedings. These claims could have been raised as a defense to foreclosure in state court, and therefore cannot be relitigated in a subsequent suit in federal court.");

🚩 Swiatkowski, 745 F. Supp. 2d at 171 ("Many of the factual allegations plaintiff raises in opposition to the instant motion to dismiss involve issues that could have been raised as claims or defenses in the state court [foreclosure] proceedings.");

🚩 Gray v. Americredit Fin. Servs., Inc., No. 07 Civ. 4039, 2009 WL 1787710, at *6 n. 2 (S.D.N.Y. June 23, 2009) ("Plaintiff's allegations of fraud regarding the underlying loan transaction do not appear to be of the type recognized by

certain courts as immune from *res judicata*."); 🚩 Yeiser v. GMAC Mortg. Corp., 535 F.Supp.2d 413, 421 (S.D.N.Y. 2008) ("According to New York law, ... *res judicata* ... applies to defenses that could have been litigated, including defenses to a foreclosure.").

**\*7** Whether cast as violations of RESPA, or regulations governing the National Housing Act, plaintiffs effectively allege that defendants improperly obtained the foreclosure

judgment due to lack of standing based on fraud or "fraud in the inducement". (*See* Am. Compl.) However, plaintiffs asserted these claims, *albeit* in different form, in the state foreclosure action as affirmative defenses in their verified answer, in their opposition to LoanCare's summary judgment motion, and in support of their own cross motion for summary judgment. (Kossar Decl. Exs. I, J.) Specifically, in the state action, plaintiffs alleged that LoanCare had no standing to bring a foreclosure action, had "unclean hands," and misled, overcharged and defrauded plaintiffs in the mortgage application, closing and servicing process. (Id., Ex. I at ¶¶ 3, 8, 14, 18) The state court considered and ultimately dismissed plaintiffs' affirmative defenses and denied plaintiffs' summary judgment; instead, granting summary judgment in LoanCare's favor. (Kossar Decl. Ex. J.) "If plaintiffs were unhappy with the result of that proceeding, the proper recourse was a state court appeal. Because plaintiffs could have presented the same claims they now assert, including the RESPA claim, as defenses or counterclaims in the action for foreclosure, the doctrine of *res judicata* bars this litigation." Yeiser, 535 F. Supp. 2d at 422 (citing 12 U.S.C. § 2614, which authorizes an action, pursuant to the provisions of RESPA, to be brought in the federal district court or in any other court of competent jurisdiction in which the property involved is located, or where the violation is alleged to have occurred); Mercado v. Playa Realty Corp., No. CV 03-3427, 2005 WL 1594306, at *7 (E.D.N.Y. July 7, 2005) (determining that because plaintiff could have asserted the new claims she was raising in her federal action during the foreclosure action as counterclaims and the relief sought by plaintiff was inconsistent with the ruling in the foreclosure action, the new claims were barred by the doctrine of *res judicata*). [8]

Lastly, the present action satisfies the privity requirement for claim preclusion since LoanCare commenced the foreclosure proceeding and is a named party to the current action. Further, Selene, a non-party to the earlier state court action may still invoke claim preclusion if it can demonstrate that it was in privity with a party to the earlier action. See Houdet v. U.S. Tennis Ass'n, No. 13-CV-5131, 2014 WL 6804109, at *4 (E.D.N.Y. Dec. 3, 2014) (finding *res judicata* to apply "not just to the parties in a prior litigation but also to those in privity with them" where the "new defendants have a sufficiently close relationship to justify [its] application" (internal quotation marks omitted) ). "A relationship of privity 'includes those who are successors to a property interest, those who control an action although not formal parties to it, [and] those whose interests are represented by a party to the action.' " Modular Devices, Inc.

v. Alcatel Alenia Space Espana, No. 08-CV-1441, 2010 WL 3236779, at *4 (E.D.N.Y. Aug. 12, 2010) (quoting Ferris v. Cuevas, 118 F.3d 122, 126 (2d Cir. 1997) ). Under New York law, both the party servicing the mortgage and the party that later acquires it (becoming a successor in interest) are considered to be in privity with the party to the original action concerning the mortgage for purposes of *res judicata*. Yeiser, 535 F. Supp. 2d at 423.

The facts alleged in the amended complaint establish privity between Selene and LoanCare, as LoanCare assigned the mortgage to Selene on March 31, 2015—after final judgment in the state foreclosure action. See Yeiser, 535 F. Supp. 2d at 423 ("[s]ince the loan was transferred to GRP in May 2005," almost one year after the state foreclosure action, "GRP is a successor to that interest and is also in privity with [the original note holder]," which was the plaintiff in the foreclosure litigation); Hinds, 2012 WL 6827477, at *4 n.8 (finding the privity requirement satisfied where Wells Fargo was not a party in the state court proceeding, but bought the subject property at a foreclosure sale, rendering it a successor in interest). Thus, the requirements of *res judicata* are satisfied here.

Therefore, to the extent *Rooker-Feldman* does not deprive this Court of subject matter jurisdiction over plaintiffs' claims, the claims are barred by the doctrine of *res judicata* and must be dismissed.

**D. Collateral Estoppel**

Plaintiffs' claims are also precluded under the narrower doctrine of collateral estoppel. "Collateral estoppel, or issue preclusion, 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party ... whether or not the tribunals or causes of action are the same.' " Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000). Whether relitigation of an issue is precluded is determined by the rules of the court that rendered the prior judgment. Id. "Under New York law, the doctrine of collateral estoppel requires that 'the issue in the second action [be] identical to an issue which was raised, necessarily decided and material in the first action.' " Hines v. HSBC Bank USA, No. 15-CV-3082, 2016 WL 5716749, at *9 (E.D.N.Y. Sept. 30, 2016) (quoting Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 349 (1999) ). Thus, "[b]efore collateral estoppel can

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

Case 3:22-cv-00953-LEK-ML    Document 7    Filed 03/28/23    Page 16 of 36

be invoked, the court must find that an identical issue was necessarily decided in the prior action and is decisive of the present action, and that there was a full and fair opportunity to contest the decision now said to be controlling." Yeiser, 535 F. Supp. at 424 (internal citation omitted).

**\*8** "To determine whether the issue in the first litigation was necessarily decided, the focus is on the rights, questions or facts that underlie a judicial decision, not the legal theories underlying the complaint." Id. at 424-25 (citing Coveal v. Consumer Home Mortgage, Inc., 2005 WL 2708388, at \*5 (E.D.N.Y. Oct. 21, 2005) ) "New York requires only that the issue have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." Id. (finding collateral estoppel to be applicable where all the facts giving rise to the amended complaint were presented in the foreclosure proceeding even though plaintiffs did not allege all of the same causes of action).

Here, plaintiffs had a full and fair opportunity to litigate the factual issues raised in the amended complaint in the state foreclosure action. And, those issues were decided in LoanCare's favor. As discussed *supra*, plaintiffs already challenged the validity of the assignment of the mortgage to LoanCare and its standing to foreclose on the Bay Shore property in state court, and the state court necessarily rejected those arguments when it found LoanCare had a valid claim to the Bay Shore property and entered judgment of foreclosure on that property. No appeal was filed in that action. Accordingly, plaintiffs cannot relitigate these issues against defendant LoanCare in federal court. See Graham v. Select Portfolio Servicing, Inc., 156 F. Supp. 3d 491, 505–06 (S.D.N.Y. 2016).

Plaintiffs are also precluded from litigating these same issues against Selene, despite the fact that Selene was not a party to the initial suit in state court. See Jasper v. Sony Music Entm't, Inc., 378 F. Supp. 2d 334, 343 (S.D.N.Y. 2005) ("By binding the plaintiff to earlier judicial decisions in which he was a party, defensive collateral estoppel precludes a plaintiff from getting a second bite at the apple merely by choosing a new adversary."); see also Fequiere v. Tribeca Lending, No. 14-CV-812, 2016 WL 1057000, at \*9–10 (E.D.N.Y. Mar. 11, 2016) (applying defensive non-mutual collateral estoppel to FDCPA claim).

Accordingly, the Court grants defendants' motions to dismiss plaintiffs' claims because they are precluded pursuant to the doctrine of collateral estoppel. [9]

### E. Sanctions

Pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"), defendant LoanCare seeks to impose sanctions on plaintiffs in the form of attorneys' fees incurred in defendant's defense of the instant action. (Def. LoanCare's Mot. to Dismiss, ECF No. 39-7 at 19-20.) For the reasons discussed below, defendant's motion is denied.

As an initial matter, the Court notes that LoanCare has not satisfied the procedural requirements for filing a sanctions motion. Rule 11 requires that a motion for sanctions "be made separately from any other motion and ... describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). In any event, the Court denies LoanCare's motion for sanctions. Plaintiffs' claims against defendants are plainly without merit. Nevertheless, this alone does not warrant sanctions, particularly as plaintiff is proceeding *pro se*. Although Rule 11 does apply to *pro se* litigants, the court may take into account the "special circumstances of litigants who are untutored in the law," Maduakolam v. Columbia Univ., 866 F.2d 53, 56 (2d Cir. 1989), as well as whether such a litigant has been warned of the possible imposition of sanctions. See Kuntz v. Pardo, 160 B.R. 35, 40 (S.D.N.Y. 1993); see also Fed. R. Civ. P. 11 advisory committee's note to the 1993 amendments (stating that the court should consider, *inter alia*, whether the motion was made in bad faith). There are no facts indicating that plaintiff instituted or maintained this lawsuit in bad faith or that they were warned of the imposition of sanctions. For all of the above reasons, LoanCare's request for sanctions is denied.

### F. Leave to Amend

**\*9** *Pro se* plaintiffs are ordinarily given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Shomo v. City of New York, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation omitted). Nevertheless, "a district court may deny a *pro se* plaintiff leave to amend when amendment would be futile." Boddie v. N.Y. State Div. of Parole, No. 08-CV-911, 2009 WL 1033786, at \*5 (E.D.N.Y. Apr. 17, 2009).

Here, the Court has carefully considered whether plaintiffs should be granted leave to amend the complaint. Having decided plaintiffs' claims are barred by *Rooker-Feldman*, *res judicata* and collateral estoppel, the Court finds that any amendment of these claims would be futile. For these reasons, the Court declines to grant plaintiffs leave to amend.

### III. CONCLUSION

For the reasons stated above, the Court grants defendants' motions and dismisses plaintiffs' amended complaint in its entirety. The Clerk of Court is directed to close this case and send a copy of this Order to *pro se* plaintiffs.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4185705

### Footnotes

1. Plaintiffs also allege a violation of 24 C.F.R. § 203.35 in their amended complaint, (Am. Compl. at 5), but note in their opposition to defendant LoanCare's motion to dismiss that this was an error. (Pls.' Opp. to LoanCare's Mot. to Dismiss, ECF No. 39-12 at 3.)

2. Though the amended complaint seeks relief from "LoanCare harassing us and placing us under duress" (Am. Compl. at 5-6), the only allegation of such harassment appears in plaintiffs' opposition to defendant LoanCare's motion to dismiss. (See Pls.' Opp. to LoanCare's Mot. to Dismiss, ECF No. 39-12 at 5-6.) A plaintiff "cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to [d]efendants' motion to dismiss", K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 (S.D.N.Y. 2013). In any event, plaintiff's conclusory assertions of harassment are insufficient to state any plausible claims.

3. The Court notes that plaintiffs appear to use the terms "fraud", "fraudulent concealment" and "fraud in the inducement" interchangeably.

4. To the extent that plaintiffs attempt to allege a due process violation under 42 U.S.C. § 1983, such claim is unwarranted as the defendants are private parties, not state actors.

5. According to the loan transfer documents attached to plaintiffs' amended complaint, the mortgage and note were transferred to Selene on March 31, 2015. (See Am. Compl. at 23-24.) However, Selene first became involved with plaintiffs' loan when it became a servicer of the loan on August 1, 2014. (Pls.' Opp. to Def. LoanCare's Mot. to Dismiss, ECF No. 35-1, Ex. H at 17.)

6. Plaintiffs filed for Chapter 13 bankruptcy on June 5, 2017. (Pls.' Opp. to Mot. to Dismiss, Ex. J, ECF No. 35 at 37.)

7. Plaintiffs appear to allege newly discovered facts in relation to the alleged fraudulent closing of the mortgage in 2009. (Pls.' Opp to defendant Selene's Mot. to Dismiss, ECF No. 42-26 at 1.) Specifically, plaintiffs now argue, in conclusory fashion, that at the time of the closing of their mortgage in 2009, the Title Company was a "shell company" and the attorney at the closing table was fraudulent. (Id.)

8. "Although New York's permissive counterclaim rule means that res judicata generally will not necessarily bar claims that could have been counterclaims in a prior action, this exception for counterclaims does not permit

**Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)**

Case 3:22-cv-00953-LEK-ML    Document 7    Filed 03/28/23    Page 18 of 36

an attack on a judgment" previously issued by the state court. 🔺 Beckford v. Citibank N.A., No. 00 Civ. 205, 2000 WL 1585684, at *3 (S.D.N.Y. Oct. 24, 2000) (internal quotation omitted).

9    Because plaintiffs' claims fail under *Rooker-Feldman, res judicata* and collateral estoppel, the Court need not reach the defendants' alternative arguments in support of dismissal.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 1803896
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Lilian CASTILLA, Plaintiff,

v.

CITY OF NEW YORK, New York City Detective
Oscar Sandino, Tax ID # 919673, Individually and as
a Detective of New York City Police Department, and
Police Officers John Doe Officers 1–10, Defendants.

No. 09 Civ. 5446(SHS).
|
April 25, 2013.

*MEMORANDUM ORDER*

SIDNEY H. STEIN, District Judge.

 **\*1**  Lilian Castilla has brought this action pursuant to 42
U.S.C. § 1983 against the City of New York and former New
York Police Department detective Oscar Sandino asserting
violations of her federal constitutional rights. She now moves
for summary judgment on the issue of liability against
Sandino. For the reasons set forth below, plaintiff's motion is
granted.

## I. BACKGROUND

The relevant facts are set forth fully in this Court's decision
granting summary judgment in favor of the City of New York.
*See Castilla v. City of New York,* No. 09 Civ. 5446, 2012 WL
5510910, at \*1-\*2 (S.D.N.Y. Nov. 14, 2012), *reconsideration
denied,* 2013 WL 71809 (S.D.N.Y. Jan. 2, 2013), and are
summarized below.

On February 16, 2008, Sandino and other members of
the NYPD entered Castilla's apartment to execute a search
warrant. (Castilla Aff. dated April 17, 2012 ¶ 1.) After Castilla
was strip searched and questioned, detective Sandino took
Castilla to the local police precinct. (*Id.* ¶¶ 2–7.) At the
precinct, Sandino brought Castilla into an interrogation room
and made sexually suggestive comments to her. (*Id.* ¶¶ 20–
33.) Shortly thereafter, Castilla asked to use the bathroom. (*Id.*
¶ 34.) Sandino followed her into the bathroom, displayed his

gun, ordered her to undress, and molested and sodomized her
in a stall. (*Id.* ¶¶ 37–40.)

Following an investigation, criminal charges were brought
against Sandino in the U.S. District Court for the Eastern
District of New York. Sandino subsequently pled guilty to two
counts of depriving two individuals of their civil rights, one
of which arose from events that Castilla has alleged in her
complaint in this action. (Plea Tr., Dkt. No. 107–2, at 22–23.)
When he pled guilty to these crimes, Sandino stated under
oath in open court that he

> transported the individual to the precinct for processing....
> I told Jane Doe number 1 [Castilla] in substance that she
> would go to jail and would lose custody of her children
> but that I would prevent those things from happening if she
> would have sexual intercourse with me.
>
> Jane Doe number 1 asked me to use the restroom at
> the precinct. I followed Jane Doe number 1 inside the
> precinct, which at that time, she pulled down her pants and
> underwear. I then proceeded to touch her vaginal area and
> forced Jane Doe number 1 to perform oral sex on myself.

(*Id.* at 23.) In May 2012, Sandino was sentenced to 24
months' imprisonment for his crimes, including his violation
of Castilla's civil rights. *See United States v. Sandino,* No. 10
Cr. 331, Dkt. No. 38 (E.D.N.Y. May 19, 2010).

In November 2012, this Court granted the City's motion
for summary judgment in its favor and simultaneously set
a schedule for Castilla to file this motion against Sandino.
*See Castilla,* 2012 WL 5510910, at \*8. That motion was
subsequently made. Because plaintiff's attorney had failed to
serve the required Local Rule 56.2 statement for Sandino,
the Court did so itself. (Order dated February 20, 2013, Dkt.
No. 108.) Although Sandino has failed to respond to Castilla's
motion, this Court will review the record and decide it on the

merits. *See Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62,
73 (2d Cir.2001); *Milano v. Astrue,* No. 05 Civ. 6527, 2008
WL 4410131 \*1, \*25 (SDNY Sept. 26, 2008), *aff'd,* 382 Fed.
Appx. 4 (2d Cir.2010).

## II. DISCUSSION

### A. Legal Standard

 **\*2**  Summary judgment may be granted where the moving
party can demonstrate that "no genuine issue of material
fact" exists and that the moving part is entitled to judgment

as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In determining whether a genuine issue of material fact exists, the Court "is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Major League Baseball Properties, Inc. v. Salvino, Inc.,* 542 F.3d 290, 309 (2d Cir.2008); *Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d Cir.2004). Nonetheless, the party opposing summary judgment "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence" in support of its factual assertions. *D'Amico v. City of N.Y.,* 132 F.3d 145, 149 (2d Cir.1998).

Castilla contends that she is entitled to summary judgment because Sandino violated her constitutional rights when he sexually assaulted her.

### B. Sandino Violated Castilla's Constitutional Rights

Section 1983 provides relief for a plaintiff deprived of "rights, privileges, or immunities secured by the Constitution and its laws." 42 U.S.C. § 1983. The statute itself is "a method for vindicating federal rights elsewhere conferred by the Constitution and federal statutes." *See Fredericks v. City of N.Y.,* No. 07 Civ. 3659, 2008 WL 506326, at *3 (S.D.N.Y. Feb. 25, 2008) (quoting *Baker v. McCollan,* 443 U.S. 137, 145 n. 3 (1979)). To state a claim under § 1983, a plaintiff must allege (1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution. *Giordano v. City of N.Y.,* 274 F.3d 740, 750 (2d Cir.2001); *Smart v. City of N.Y.,* No. 08 Civ. 2203, 2009 WL 862281, at *3 (S.D.N.Y. Apr. 1, 2009).

The first element is undisputed. The actions, to which Sandino admitted, were committed by Sandino in the course of acting as an NYPD detective, and thus he was acting under color of state law. *West v. Atkins,* 487 U.S. 42, 49–50 (1988); *Hayut v. State Univ. of N.Y.,* 352 F.3d 733, 744 (2d Cir.2003). The issue that remains is whether the admitted conduct of the defendant amounts to a deprivation of Castilla's constitutional rights. Described previously by this Court as

a "shocking sexual assault" (*Castilla,* 2012 WL 5510910, at *8), it most certainly does.

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor,* 490 U.S. 386, 394 (1989). The U.S. Court of Appeals for the Second Circuit has applied the Fourth Amendment standard "to the period prior to the time when the person arrested is arraigned or formally charged, and remains in the custody (sole or joint) of the arresting officer." *Powell v. Gardner,* 891 F.2d 1039, 1044 (2d Cir.1989); *see also Bryant v. City of N.Y.,* 404 F.3d 128, 136 (2d Cir.2005) ("[T]he Fourth Amendment governs the procedures applied during some period following an arrest.") This Court will thus evaluate whether Sandino's actions violated rights protected by the Fourth Amendment.

**\*3** To evaluate an excessive force claim, a court must determine whether the force used was "objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.' " *Maxwell v. City of N.Y .,* 380 F.3d 106, 108 (2d Cir.2004); *see also Sulkowska v. City of N.Y.,* 129 F.Supp.2d 274, 292 (S.D.N.Y.2001). "The inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy v. Freshwater,* 623 F.3d 90, 96 (2d Cir.2010).

There is no genuine dispute here regarding whether Sandino's conduct was objectively unreasonable and whether his actions were justified by the governmental interest in Castilla's arrest or the investigation that led to it. During his plea allocution Sandino stated under oath that he had threatened and molested Castilla and forced her to perform oral sex on him in a stall of a police precinct's bathroom. (Plea Tr. at 23.) "The district court is entitled to accept a defendant's statements under oath at a plea allocution as true." *United States v. Maker,* 108 F.3d 1513, 1521 (2d Cir.1997). Based on Sandino's own sworn statements and his failure to submit any countervailing evidence, his conduct constituted excessive force and clearly violated Castilla's Fourth Amendment rights. Sandino is also liable for depriving Castilla of her substantive due process rights by violating her bodily integrity for no

legitimate reason in a way that shocks the conscience. *See* *Lombardi v. Whitman,* 485 F.3d 73, 79 (2d Cir.2007); *Poe v. Leonard,* 282 F.3d 123, 137 (2d Cir.2002).

## III. CONCLUSION

Castilla's motion for summary judgment against Sandino on the issue of liability is granted. This action will proceed to a trial on the issue of damages. On or before June 10, 2013, the parties shall submit separate statements setting forth (1) any stipulations they have agreed upon, (2) each proposed witness and the substance of that witness's testimony, (3) a list of exhibits to be offered (4) proposed jury charges, (5) proposed voir dire, (6) the factual basis for each category of damages sought or opposed, and (7) a memorandum of law.

SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 1803896

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

## Attorneys and Law Firms

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

## DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2.
On August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:22-cv-00953-LEK-ML    Document 7    Filed 03/28/23    Page 23 of 36

additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right.

*See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir.1987).

 *2 Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." Smiley v. Davis, 1988 WL 78306, *2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge

recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint;

(5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See* Camardo v. General Motors Hourly–Rate Employees Pension Plan, 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); Chambrier v. Leonardo, 1991 WL 44838, *1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); Schoolfield v. Dep't of Correction, 1994 WL 119740, *2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); Vargas v. Keane, 1994 WL 693885, *1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also* Scipio v. Keane, 1997 WL 375601, *1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P.

72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous. [1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams,

the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:22-cv-00953-LEK-ML   Document 7   Filed 03/28/23   Page 26 of 36

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under 🚩 Rule 12(b)(6), 🚩 *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." 🚩 *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable 🚩 § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. 🚩 *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); 🚩 *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (🚩 section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under 🚩 § 1983. 🚩 *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under 🚩 § 1983. 🚩 *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

**CONCLUSION**

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 3:22-cv-00953-LEK-ML    Document 7    Filed 03/28/23    Page 27 of 36

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **_FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW._** _Roldan v. Racette,_ 984 F.2d 85, 89 (2d Cir.1993) (citing _Small v. Secretary of Health and Human Services,_ 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

## Footnotes

1    I note, however, that the report-recommendation would survive even _de novo_ review.

End of Document    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

1995 WL 316935
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Mina POURZANDVAKIL, Plaintiff,

v.

Hubert HUMPHRY, Judisicial Systeam of The State of
Minnesota and Olmested County Court Systeam, and
State of Minnesota, Saint Peter State Hospital, Doctor
Gammel Stephelton, et el Erickson, North West Bank
and Trust, Olmested County Social Service, J.C. Penny
Insurnce, Metmore Finicial, Traveler Insurnce, Comecial
Union Insurnce, Hirman Insurnce, Amrican State
Insurnce, Farmers Insurnce, C. O Brown Insurnce, Msi
Insurnce, Steven Youngquist, Kent Chirstain, Micheal
Benson, United Airline, Kowate Airline, Fordmotor
Cridite, First Bank Rochester, George Restwich,
British Airways, Western Union, Prudenial Insurnce,
T.C.F. Bank, Judge Sandy Kieth, Judge Niergari,
Olmestead County Judgering, Judge Mores, Judge
Jacobson, Judge Challien, Judge Collin, Judge Thomase,
Judge Buttler, Judge Morke, Judge Moweer, Sera
Clayton, Susan Mudhaul, Ray Schmite, Defendants. [1]

Civ. A. No. 94-CV-1594.

|

May 23, 1995.

## Attorneys and Law Firms

Hubert H. Humphrey, III, Atty. Gen. of the State of Minn.,
St. Paul, MN, Jerome L. Getz, Asst. Atty. Gen., of counsel,
for Hubert H. Humphry, III, Judicial System of the State
of Minnesota, St. Peter Regional Treatment Center, Gerald
Gammell, MD, William Erickson, MD, Thomas Stapleton,
MD, the Honorable James L. Mork, Chief Judge Anne
Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge
Dennis Challeen, and Judge Lawrence Collins.

Condon & Forsyth, P.C., New York City, Stephen J. Fearon,
Michael J. Holland, of counsel, for British Airways, P.L.C.
and Kuwait Airways Corp.

Dunlap & Seeger, P.C., Rochester, MN, Gregory J. Griffiths,
of counsel, for Olmsted County, Raymond Schmitz, Susan
Mundahl, Norwest Bank Minnesota, N.A. (the Northwest
Bank & Trust), C.O. Brown Agency, Inc.

Arthur, Chapman, McDonough, Kettering & Smetak, P.A.,
Minneapolis, MN, Eugene C. Shermoen, Jr., of counsel, for
J.C. Penney Ins. Co. and Metropolitan Ins. Co.

Shapiro & Kreisman, Rochester, NY, John A. DiCaro, of
counsel, for Metmor Financial, Inc.

Costello, Cooney & Fearon, Syracuse, Paul G. Ferrara, Robert
J. Smith, of counsel, for Travelers Ins. Companies; Hirman
Ins.; Commercial Union Ins. Companies.

Smith, Sovik, Kendrick & Sugnet, P.C., Syracuse, Thomas
N. Kaufmann, of counsel, for American States Ins. Co. and
Prudential Ins. Co.

Steven C. Youngquist, Rochester, MN, pro se.

Thomas J. Maroney, U. S. Atty., Syracuse, NY, William F.
Larkin, Asst. U. S. Atty., of counsel, for Michael Benson,
Postmaster N. D. of New York.

George F. Restovich & Associates, Rochester, MN, George F.
Restovich, of counsel, for George F. Restovich.

Conboy, McKay, Bachman & Kendall, L.L.P, Watertown, NY,
George K. Myrus, of counsel, for Western Union.

Richard Maki, Rochester, MN, pro se.

## MEMORANDUM-DECISION AND ORDER

POOLER, District Judge.

## INTRODUCTION

**\*1** In the four and one-half months since she filed this
action, plaintiff Mina Pourzandvakil has filed three amended
complaints and ten motions. She also has sought and received
entry of default against ten defendants, none of whom she
properly served. She twice has sought and been denied
temporary restraining orders. She has included in her action
defendants with no apparent connection to this forum, that
were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of
defendants have filed a total of twelve motions, some seeking
vacation of the defaults entered against them, some seeking
dismissal and others seeking both. We grant defendants'
motions insofar as they seek vacation of the clerk's entries of
default and dismissal of the complaint. We vacate *sua sponte*

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Case 3:22-cv-00953-LEK-ML    Document 7    Filed 03/28/23    Page 29 of 36

the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

BACKGROUND

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy

easy summarization and will be addressed only insofar as they are relevant to the various motions.

**\*2** The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*)[2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper[3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Case 3:22-cv-00953-LEK-ML    Document 7    Filed 03/28/23    Page 30 of 36

The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or Rule 12 of the Federal Rules of Civil Procedure. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to Fed. R. Civ. P. 12(b) or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

**\*3** Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

ANALYSIS

The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. Fed. R. Civ. P. 4(e)(2). Service on an individual can also be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. Fed. R. Civ. P. 4(e)(1). Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. Fed. R. Civ. P. 4(h)(1) and 4(e)(1). Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See* N.Y. Civ. Prac. L. & R. §§ 308, 311 (McKinney Supp. 1995); N.Y. Bus. Corp. Law § 306 (McKinney Supp. 1995); Minn. Stat. § 543.08 (1995); Minn. R. 4.03 (1995). Finally, service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. Fed. R. Civ. P. 4(j)(2). Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and

Case 3:22-cv-00953-LEK-ML    Document 7    Filed 03/28/23    Page 31 of 36

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

## II. The Jurisdictional Arguments

 **\*4** In addition to raising various other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

### A. Personal Jurisdiction

Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Youngquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to Rule 14 or Rule 19 of the Federal Rules of Civil Procedure and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be

subject to jurisdiction in the courts of general jurisdiction in any state of the United States. Fed. R. Civ. P. 4(k). Defendants are not subject to federal interpleader jurisdiction and they were not joined pursuant to Rule 14 or Rule 19. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to Rule 4(k). *See* N.Y. Civ. Prac. L. & R. § 302 (McKinney Supp. 1995). This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id.* §302(a). The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of Section 302(a). Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

### B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by Fed. R. Civ. P. 8(a)(1). Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff was a party.

 *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983). These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

 **\*5** The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil

Case 3:22-cv-00953-LEK-ML   Document 7   Filed 03/28/23   Page 32 of 36

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. 28 U.S.C. § 1332. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under 28 U.S.C. § 1367(a). Section 1367(a) requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

### C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. The general venue statute

provides that a diversity action, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

**\*6** 28 U.S.C. § 1391(a). Section 1391(b) provides that federal question actions, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

*Id.* § 1391(b). The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id.* § 1406(a). Because, as we will explain below, Pourzandvakil's complaint not only fails

Case 3:22-cv-00953-LEK-ML    Document 7    Filed 03/28/23    Page 33 of 36

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to transfer this case to another district. The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir. 1993) (holding that it was an improper exercise of discretion to dismiss rather than transfer when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ. No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b) (6). [7] We already have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the Rule 12(b)(6) issue only on ASI's motion. *See* Bell v. Hood, 327 U.S. 678, 682-83 (1946) (subject matter jurisdiction); Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963) (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

**\*7** Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other defendants. She alleges that certain of the insurance

company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987). A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". Barr, 810 F. 2d at 363.

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as

Case 3:22-cv-00953-LEK-ML   Document 7   Filed 03/28/23   Page 34 of 36

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] Civ. No. 94-C944 (D.D.C. 1994), *Pourzandvakil v. Doty* (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to amend her pleading and plaintiff still was not able to offer specifics. [9] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White,* 886 F. 2d 721, 724 (4th Cir. 1989)). We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. *Fed. R. Civ. P. 12(b)(6).*

**\*8** We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under *28 U.S.C. §1915(d),* holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. The Supreme Court explicitly has acknowledged a district court's power under *Section 1915(d)* to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id.* at 329 n.8. The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter,* 151 F.R.D. 537, 540 (S.D.N.Y. 1993), *aff'd* 41 F.3d 1500 (2d Cir. 1994); *cf. Pillay v. I.N.S.,* 45 F.3d 14, 17 (2d Cir. 1995) (per curiam) (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts and

found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler,* 151 F.R.D. at 540.

## IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture,* 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991). Moreover, her litigiousness has not yet reached the point at which courts in this circuit have justified injunctive relief. *See id.* at 694 (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief, however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id.* at 695.

## CONCLUSION

**\*9** All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183, 188-9 (5th Cir. 1986) (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co.,* 377 F.2d 194, 199 n.3 (2d Cir. 1967) (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 139 F.2d 871, 875 (3d Cir.) *cert. denied,* 322 U.S. 740 (1944) (dismissal for lack of personal jurisdiction is not a dismissal on the merits). The dismissals against the remaining defendants are

with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied. However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1995 WL 316935

## Footnotes

1    Names in the caption are spelled to reflect plaintiff's complaint.

2    Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

3    Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

4    The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against non-moving defendants for failure to state a claim on which relief can be granted.

5    The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

6    We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. 28 U.S.C. § 1332(a). However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id.* § 1332(a)(2). Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of 28 U.S.C. § 1603. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See* 28 U.S.C. § 1330. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under Section 1332. *Cf. Hiram Walker & Sons, Inc. v. Kirk Line,* 877 F.2d 1508, 1511-1512 (11th Cir. 1989), *cert. denied,* 115 S.Ct. 1362 (1995) (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including

**Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)**

Case 3:22-cv-00953-LEK-ML    Document 7    Filed 03/28/23    Page 36 of 36

complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under ⚑ 28 U.S.C. § 1332.

7    J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

8    Former Supreme Court Justice Harry A. Blackmun.

9    We note also that plaintiff has not requested leave to amend in this action.

---

**End of Document**                                  © 2023 Thomson Reuters. No claim to original U.S. Government Works.

---